IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHERRY MARTIN,

                Plaintiff,

      v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

           Defendant.

CIVIL ACTION FILE NO.

1:09-CV-3497-JFK

**FINAL OPINION AND ORDER**

      Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied her applications for a period of disability, disability insurance benefits, and Supplemental Security Income.  For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **AFFIRMED**.

I.      **Procedural History**

      Plaintiff Sherry Martin filed applications for a period of disability, disability insurance benefits, and Supplemental Security Income on August 20, 2004.  [Record

("R.") at 14, 84]. Plaintiff alleged that she became disabled on February 1, 2001. [R. at 237]. After her applications were denied initially and on reconsideration, an administrative hearing was held on November 14, 2008. [R. at 388-407]. The Administrative Law Judge ("ALJ") issued a decision on November 21, 2008, denying Plaintiff's applications, and the Appeals Council denied Plaintiff's request for review on September 28, 2009. [R. at 2-4, 11-21]. Plaintiff filed a complaint in this court on November 27, 2009, seeking judicial review of the final decision. [Doc. 1]. The parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Statement of Facts

The ALJ found that Plaintiff Sherry Martin has degenerative disc disease with facet osteoarthritis, chronic obstructive pulmonary disease, and asthma. [R. at 17]. Although these impairments are "severe" within the meaning of the Social Security Regulations, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 18]. According to the ALJ, Plaintiff was not under a disability at any relevant time because she was capable of performing her past relevant work as a home health supervisor. [R. at 21].

2

The ALJ's decision [R. at 14-21] states the facts of this case as modified herein as follows:

Claimant Sherry Martin testified at the administrative hearing on November 14, 2008, that she has not worked in six or seven years. She had worked at a health care location stocking files and charts. She testified that she could not continue performing that work because it involved too much bending and walking. She goes to the hospital for ER visits but she does not have a doctor. The claimant testified that she does not have medical insurance and that, for this reason, Grady Hospital will not see her. She lives with her mother who supports her. She stated that she performs a limited amount of household chores, such as making the bed, sweeping, and washing dishes. The claimant gets food stamps. She claimed that she can sit for one hour and then needs to walk around for ten to fifteen minutes. She can stand for fifteen to twenty minutes. Every time she walks and stands, she needs to lie down. The claimant testified that she had an operation on her back twenty years ago and was in a body cast for eight months.

Medical records from Grady Health System dated July 27 to 28, 2005, show the claimant was seen for complaints of back and right leg, hip, and knee pain and bilateral leg numbness and tingling due to back surgery for scoliosis. She also complained of headache, dizziness, blurry vision with dark spots, chest pain, shortness of breath with

3

exertion, wheezing, cough, and nausea and vomiting.  Physical examination revealed elevated blood pressure of 245/153, systolic murmur, epigastric tenderness, and lymph node tenderness.  An electrocardiogram (EKG) was abnormal.  The assessment was hypertensive urgency, asthma, and low back pain.  (F35-F48).

The claimant underwent a consultative examination by Robert Jackson, M.D., on December 15, 2005, during which she complained of back pain and muscle spasms with a history of back surgery and hypertension.  She reported increased pain with prolonged standing and sitting.  The examination revealed elevated blood pressure of 180/140.  A lumbar spine x-ray showed minimal degenerative spur at L2 and Harrington rods in place.  (F7-F11).

She was seen in the emergency room at DeKalb Medical Center on June 17, 2006, for complaints of headache and prolonged vaginal bleeding.  The physical examination revealed elevated blood pressure of 228/134.  An EKG was abnormal with possible left atrial enlargement and left ventricular hypertrophy.  A pelvic ultrasound showed uterine fibroids.  The discharge diagnosis was uncontrolled hypertension, acute urinary tract infection, and abnormal vaginal bleeding secondary to leimyomas.  (F54-F84).

4

The claimant underwent a consultative medical examination on October 9, 2008, by Jeffrey T. Nugent, M.D.  The claimant complained of low back pain and stiffness since the middle of 1999.  She reported a history of Harrington rod placement and spinal fusion at the age of eighteen for thoracic scoliosis.  She also reported difficulty sitting, standing, moving about, and doing anything heavy due to back pain with occasional radiating pain into the legs.  Further, she reported a history of chronic obstructive pulmonary emphysema, asthma, and hypertension.  On exam, Dr. Nugent found elevated blood pressure of 156/84, midline thoracic scar, no thoracic spine motion, reduced lumbar spine range of motion with tenderness, and bilateral hamstring tightness.  Thoracic spine x-rays showed Harrington rod instrumentation from T4 to L1, posterior spinal fusion, curve reduction to 20 degrees of scoliosis from T6 to T10, and less than normal kyphosis.  In addition, lumbar spine x-rays revealed degenerative disc disease moderate to severe at L5-S1, mild to moderate at L2-3, moderate to severe facet osteoarthritis from L3-4 to L5-S1, and mild bilateral sacroiliitis.  Dr. Nugent's diagnosis included symptomatic multi-level lumbar degenerative disc disease, symptomatic facet osteoarthritis, asymptomatic thoracic instrumentation and fusion, chronic obstructive pulmonary emphysema exact degree unknown, history of bronchial

5

asthma, hypertension, history of uterine fibroids now asymptomatic, and history of pulmonary nodules.  (F88-F101).

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.   Standard of Review

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

The scope of judicial review of the Commissioner's decision is limited.  The court's function is to determine: (1) whether the record, as a whole, contains substantial evidence to support the findings and decision of the Commissioner; and (2)

whether the Commissioner applied proper legal standards. <u>See</u> <u>Vaughn v. Heckler</u>, 727 F.2d 1040, 1042 (11th Cir. 1984). Substantial evidence is more than a scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>See</u> <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).

The claimant has the initial burden of establishing the existence of a "disability" by demonstrating that she is unable to perform her former type of work. If the claimant satisfies her burden of proving disability with respect to her former type of work, the burden shifts to the Commissioner to demonstrate that the claimant, given her age, education, work experience, and impairment, has the capacity to perform other types of jobs which exist in the national economy. <u>See</u> <u>Boyd v. Heckler</u>, 704 F.2d 1207, 1209 (11th Cir. 1983).

Under the regulations as promulgated by the Commissioner, a five step sequential procedure must be followed when evaluating a disability claim. <u>See</u> 20 C.F.R. §§ 404.1520(a) and 416.920(a). In the sequential evaluation, the Commissioner must consider in order: (1) whether the claimant is gainfully employed, 20 C.F.R. §§ 404.1520(b) and 416.920(b); (2) whether the claimant has a severe impairment which significantly limits her ability to perform basic work-related functions, 20 C.F.R. §§

7

404.1520(c) and 416.920(c); (3) whether the claimant's impairments meet the Listing of Impairments, 20 C.F.R. §§ 404.1520(d) and 416.920(d); (4) whether the claimant can perform her past relevant work, 20 C.F.R. §§ 404.1520(e) and 416.920(e); and (5) whether the claimant is disabled in light of age, education, and residual functional capacity, 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If, at any step in the sequence, the claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a) and 416.920(a).

**IV.    Findings of the ALJ**

The ALJ made the following findings of fact:

1.    The claimant met the insured status requirements of the Social Security Act on June 30, 2005.

2.    The claimant has not engaged in substantial gainful activity since February 1, 2001, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: degenerative disc disease with facet osteoarthritis; chronic obstructive pulmonary disease; and asthma. (20 C.F.R. 404.1521 *et seq.* and 416.921 *et seq.*).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1525, 404.1526, 416.925 and 416.926).

5.    The claimant has the residual functional capacity to perform work activity with the following limitations: lift and carry 20 pounds frequently and 30 pounds occasionally; sit for two hours at one time and a total of eight hours in an eight-

8

hour day; stand for two hours at one time and a total of four hours in an eight-hour day; walk for two hours at one time and a total of four hours in an eight-hour day; continuously reach, handle, finger, and feel; occasionally push and pull with the lower extremities; frequently operate foot controls; never climb ropes, ladders, or scaffolds or crawl; occasionally climb stairs and ramps, balance, stoop, kneel, or crouch; no exposure to excessive odors, fumes, gases, dust, poor ventilation, extreme wetness, or humidity; no exposure to unprotected heights; occasional exposure to moving mechanical parts; and frequent exposure to operating a motor vehicle, extreme cold and heat, and vibrations.

6.    The claimant is capable of performing past relevant work as it does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565 and 416.965).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2001, through the date of the ALJ's decision (20 C.F.R. 404.1520(f) and 416.920(f)).

[R. at 14-21].

## V.    Discussion

In the present case, the ALJ found at the first step of the sequential evaluation that Plaintiff Sherry Martin has not engaged in substantial gainful activity since her alleged disability onset date of February 1, 2001.  [R. at 17].  At the second step, the ALJ determined that the claimant had degenerative disc disease with facet osteoarthritis, chronic obstructive pulmonary disease, and asthma.  [R. at 17]. Although these impairments are "severe" within the meaning of the Social Security Regulations, the ALJ found at the third step that they do not meet or medically equal

9

one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 18].
The ALJ found at the fourth step of the sequential evaluation that the claimant was
capable of performing her past relevant work as a home health supervisor. [R. at 21].
Therefore, the claimant was not under a disability at any time from February 1, 2001,
the alleged onset date, through November 21, 2008, the date of the ALJ's decision. [R.
at 21].

Plaintiff argues that the ALJ failed to properly apply the relevant law. [Doc.
15]. Most of Plaintiff's arguments involve the ALJ's credibility determination.
Plaintiff, for example, contends that the ALJ did not apply the "pain standard"
established by the Eleventh Circuit Court of Appeals when he evaluated her subjective
complaints. [Doc. 15 at 6-9]. Plaintiff also contends that the ALJ did not adequately
set forth the reasons for his credibility determination and that he erred in implying that
Plaintiff was not credible due to her failure to obtain medical treatment. [Doc. 15 at
9-12]. In addition to issues involving her credibility, Plaintiff argues that the ALJ's
residual functional capacity ("RFC") assessment was not in compliance with relevant
Social Security law because it was not a function-by-function assessment of Plaintiff's
ability to do work-related activities. [Doc. 15 at 9].

10

Where a claimant's testimony, if credited, could support a disability determination, the ALJ must make and explain his finding concerning the credibility of the claimant's testimony.  See Viehman v. Schweiker, 679 F.2d 223 (11th Cir. 1982); Scharlow v. Schweiker, 655 F.2d 645 (5th Cir. 1981).  A claimant's subjective testimony of pain must be evaluated using a three-part "pain standard" established by the Eleventh Circuit.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  Id.  If the ALJ decides to discredit a claimant's testimony of pain, he must give explicit and adequate reasons for doing so.  Id.; Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

In the present case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the ALJ's RFC assessment discussed *supra*.  [R. at 20].  Plaintiff Martin argues that the ALJ

11

failed to properly apply the pain standard when he made this finding. [Doc. 15 at 6-9]. Plaintiff points out that medical records reveal that she had been complaining of back pain and muscle spasms in 2005. [Doc. 15 at 8; R. at 198-205]. Dr. William Render also completed a physical RFC assessment at that time and found that Plaintiff was frequently limited in her ability to reach in all directions, including overhead. [R. at 201]. In addition, Plaintiff notes that in 2008, Dr. Jeffrey Nugent diagnosed her with lumbar degenerative disc disease, facet osteoarthritis, thoracic instrumentation and fusion, scoliosis, chronic obstructive pulmonary emphysema, asthma, history of pulmonary nodules, hypertension, and history of uterine fibroids. [Doc. 15 at 8; R. at 136]. Plaintiff argues, "Given these findings and Ms. Martin's complaints of back pain and muscle spasms, the ALJ's RFC finding that Ms. Martin can perform medium work (standing or walking up to 6 hours in an 8 hour day) with occasional pushing or pulling of controls with her lower extremities is not supported by the record and thus incorrect." [Doc. 15 at 8-9]. Plaintiff's argument is unpersuasive.

The ALJ offered an extensive discussion of Plaintiff's credibility and presented numerous reasons for finding that her subjective complaints regarding the intensity, persistence and limiting effects of her symptoms were not entirely credible. [R. at 18-20]. The ALJ explained that he found that Plaintiff's allegations of the limiting effects

12

of her pain and other symptoms were not substantiated by objective medical evidence. [Id.].  The ALJ noted that when Plaintiff presented to the Grady Health System ER in July 2005 with complaints of back pain, the treating sources found normal upper and lower extremities and no musculoskeletal abnormalities.  [R. at 19, 184-88].  Plaintiff was also found to have "good and non-labored respirations" and "clear lungs."  [Id.]. The ALJ also pointed to notes from a consultative examination performed by Dr. Jackson in December 2005.  [R. at 19, 217-21].  As the ALJ explained, "Dr. Jackson did not consider the claimant disabled" and found that she had "clear lungs, 5/5 motor strength, full range of motion in all joints, negative straight leg raising, normal gait, and no extremity edema, cyanosis, or clubbing."  [Id.].

Plaintiff, as noted *supra*, cites to the RFC assessment completed by Dr. Render in support of her complaints of disabling pain.  [Doc. 15 at 8].  However, Dr. Render found that many of Plaintiff's allegations were not fully credible:  "Allegations of limited standing, sitting or laying are partially credible."  [R. at 203].  Plaintiff also cites to the diagnoses made by Dr. Nugent to support her subjective complaints, but the diagnosis of an impairment does not establish that a claimant's complaints are credible or that she is disabled.  [Doc. 15 at 8; R. at 136].  "Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis

13

of an impairment itself." Davis v. Barnhart, 153 Fed. Appx. 569, 572 (11th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).

Moreover, the opinion of Dr. Nugent actually undermines Plaintiff's claims and supports the ALJ's credibility determination, and it is clear that the ALJ relied heavily on Dr. Nugent's examination. [R. at 29, 133-46]. The ALJ wrote that he "considered the opinion of Dr. Nugent, an examining physician, regarding the claimant's functional abilities and assigned great weight." [R. at 20]. The ALJ noted that Dr. Nugent examined Plaintiff in October 2008 and found that she had "good range of motion of the cervical spine, shoulders, elbows, wrists, fingers, hips, knees, ankles, and feet without tenderness; negative straight leg raising; ability to stand on heels and toes; non-limping gait; 5/5 muscle strength throughout; 1 to 2+ and symmetrical reflexes; and no muscle atrophy, sensory deficit, or visible signs of shortness of breath." [R. at 19, 133-46]. In an assessment of Plaintiff's ability to perform work-related activities, Dr. Nugent opined that she could: lift and carry up to 20 pounds frequently and up to 50 pounds occasionally; sit for 2 hours at a time and 8 hours total, stand for 2 hours at a time and 4 hours total, and walk for 2 hours at a time and 4 hours total; continuously reach, handle, finger, feel and push/pull with both hands; frequently operate foot controls; occasionally climb, balance, stoop, kneel, and crouch; never crawl; frequently

14

operate a motor vehicle; frequently work in/around humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold and heat, and vibrations; occasionally work around moving mechanical parts; and never work around unprotected heights. [R. at 141-46]. The ALJ's findings were similar to those of Dr. Nugent, but the ALJ explained that because he gave Plaintiff "the benefit of the doubt concerning back pain and breathing problems," he found that she was "somewhat more limited than that determined by Dr. Nugent." [R. at 21].

In addition to the medical evidence in the record, the ALJ explained in his decision that he based his credibility determination, in part, on Plaintiff's failure to seek medical treatment. The ALJ wrote that despite Plaintiff's subjective complaints of disabling pain, the evidence "fail[ed] to establish that the claimant has required frequent and repeated ER visits, hospitalizations, or surgical intervention for any of her impairments, especially since the alleged onset date." [R. at 20]. As the ALJ noted, Plaintiff had "only two ER visits since February 2001," she "has not required recent spinal procedures . . . for problems related to back pain," and she has not sought treatment for chronic obstructive pulmonary disease or asthma. [R. at 20]. Plaintiff has a history of hypertension, but the ALJ explained that Plaintiff had been non-compliant with her treatment and, in 2005, "notes indicate[d] she had not taken blood

15

pressure medication in three years." [R. at 19].  The ALJ also pointed out that "since the alleged onset date, all treatment has been conservative in nature consisting of only intermittent ER visits with no physician rendering the claimant disabled or corroborating her allegations of total incapacitation." [R. at 20].

Plaintiff argues that the ALJ erred in his credibility determination when he took into account her failure to obtain treatment. [Doc. 15 at 12].  Social Security Ruling ("SSR") 96-7p states that the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide. . . ." As Plaintiff notes, SSR 96-7p lists the inability to afford medical treatment as an example of a legitimate explanation offered by a claimant for not seeking treatment. At the administrative hearing, Plaintiff testified that she does not see a doctor for her medical problems because she "can't afford it" and that she does not have any insurance. [R. at 242-43].  Plaintiff argues that the ALJ committed error because he did not consider her lack of financial resources as the reason for her non-compliance and her failure to obtain medical treatment. [Doc. 15 at 12].  The court finds Plaintiff's argument to be unpersuasive.

The ALJ did not ignore Plaintiff's contention that she is unable to afford medical treatment, and he questioned her about her reluctance to seek treatment at the hearing. [R. at 242]. When Plaintiff cited her lack of finances, the ALJ responded, "But you – you can go to Grady, right?" [Id.]. Plaintiff confirmed that she does go to Grady Hospital, and the ALJ stated, "Well, Grady provides care for people that can't afford it." [R. at 242]. Plaintiff testified that she was not aware that Grady provides medical care for indigent patients. [R. at 243]. The ALJ addressed this portion of Plaintiff's testimony in his decision and found it not credible. [R. at 18]. The ALJ explained that he "does not credit claimant's testimony that her failure to undergo medical treatment for her hypertension is due to lack of funds or insurance. Claimant obtained care at Grady Hospital which provides medical care for indigent's [sic] in metropolitan Atlanta, claimant lives within the Grady service area, and claimant previously received care from Grady." [R. at 18]. The court finds that, in light of these statements, the ALJ acted in accordance with Social Security law when he considered but ultimately discounted Plaintiff's explanations for not receiving medical care. Furthermore, the ALJ's decision not to credit Plaintiff's subjective complaints due to a lack of treatment was consistent with SSR 96-7p, which provides that "the individual's statements may

17

be less credible if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96-7p.

For these reasons, the court finds that the ALJ applied the proper legal standards in evaluating Plaintiff's subjective complaints of pain and other symptoms. The ALJ evaluated Plaintiff's testimony using the Eleventh Circuit's pain standard, and he gave explicit and adequate reasons for discrediting her complaints. Holt, 921 F.2d at 1223; Hale, 831 F.2d at 1011. Because substantial evidence supports the ALJ's credibility determination, remand is not warranted on this basis.

Plaintiff also makes a brief argument that the ALJ erred in making his RFC assessment because he did not complete a function-by-function analysis of Plaintiff's abilities and limitations. [Doc. 15 at 9]. Plaintiff correctly notes that pursuant to SSR 96-8p, the ALJ is required to make an assessment of the claimant's exertional capacity with respect to her "remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing and pulling." SSR 96-8p. The ruling states that the ALJ must consider each function separately and provides an example: "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours." SSR 96-8p. See Ivey v. Barnhart, 2001 WL 34043389, at *2 (N.D. Tex. January 15, 2002) ("Not only does SSR 96-8p explicitly speak to the importance of considering

18

these strength demands separately when deciding whether an individual can do past relevant work, but this approach is wholly consistent with the purpose of determining RFC – to assess an individual's ability to do sustained work-related physical activities in a work setting on a regular and continuing basis.").  Thus, pursuant to these provisions, the ALJ was required to "first determine the claimant's ability to sit, stand, walk, lift, carry, push and pull before assigning an exertional category, e.g., sedentary, light, medium, heavy." <u>Lechner v. Barnhart</u>, 321 F. Supp. 2d 1015, 1036 n.27 (E.D. Wis. 2004) (citing <u>Gotz v. Barnhart</u>, 207 F. Supp. 2d 886, 896 (E.D. Wis. 2002)).

While Plaintiff argues that the ALJ did not follow SSR 96-8p, the decision of the ALJ establishes that he did, in fact, make a function-by-function assessment of Plaintiff's abilities and limitations.  The ALJ found that Plaintiff has the residual functional capacity to: lift and carry 20 pounds frequently and 30 pounds occasionally; sit for two hours at one time and a total of eight hours in an eight-hour day; stand for two hours at one time and a total of four hours in an eight-hour day; walk for two hours at one time and a total of four hours in an eight-hour day; continuously reach, handle, finger, and feel; occasionally push and pull with the lower extremities; frequently operate foot controls; never climb ropes, ladders, or scaffolds or crawl; occasionally climb stairs and ramps, balance, stoop, kneel, or crouch; and have no significant

19

exposure to pulmonary irritants or unprotected heights.   [R. at 18].   At the administrative hearing, the ALJ used these function-by-function limitations in framing his hypothetical question to the vocational expert.  [R. at 256-57].  The ALJ complied with the relevant Social Security law and did not err in assessing Plaintiff's abilities to do work-related activities.

## VI.   Conclusion

For all the foregoing reasons and cited authority, the court finds that the decision of the ALJ was supported by substantial evidence and was the result of an application of proper legal standards.   It is, therefore, **ORDERED** that the Commissioner's decision be **AFFIRMED**.  See Melkonyan v. Sullivan, 501 U.S. 89, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991).

**SO ORDERED**, this 28th day of September, 2010.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

20